UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEWART TITLE GUARANTY
COMPANY,

              Plaintiff,

vs.

KARLA SUE LOCKMAN,
KEVIN DALE LOCKMAN,
PAULA M. BARRON, JOHN P. TAYLOR,
and, NORTHERN PREFERRED TITLE
COMPANY, L.L.C.,

              Defendants.

_____/

Lead Case No. 5:05-cv-92

Hon. Hugh W. Brenneman, Jr.

-and-

FIRST AMERICAN TITLE INSURANCE
COMPANY,

              Plaintiff,

vs.

KARLA SUE LOCKMAN,
KEVIN DALE LOCKMAN,
PAULA M. BARRON, JOHN P. TAYLOR,
and, NORTHERN PREFERRED TITLE
COMPANY, L.L.C.,

              Defendants.

_____/

Case No. 1:05-cv-736

Hon. Hugh W. Brenneman, Jr.

**OPINION**

### I.      Background

Plaintiffs in these two actions seek damages that allegedly arose from the illegal acts of defendant Karla Sue Lockman ("Karla Lockman"), an employee of defendant Northern Preferred Title Company, L.L.C. ("Northern Preferred").

Karla Lockman was convicted on August 22, 2006 of embezzling over $900,000 from her employer during the first half of 2005, contrary to M.C.L. § 750.174(5)(a), which provides in pertinent part:

> (1) A person who as the agent, servant, or employee of another person, governmental entity within this state, or other legal entity or who as the trustee, bailee, or custodian of the property of another person, governmental entity within this state, or other legal entity fraudulently disposes of or converts to his or her own use, or takes or secretes with the intent to convert to his or her own use without the consent of his or her principal, any money or other personal property of his or her principal that has come to that person's possession or that is under his or her charge or control by virtue of his or her being an agent, servant, employee, trustee, bailee, or custodian, is guilty of embezzlement. . . .

> (5) If any of the following apply, the person is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $15,000.00 or 3 times the value of the money or property embezzled, whichever is greater, or both imprisonment and a fine:

> > (a) The money or personal property embezzled has a value of $20,000.00 or more but less than $50,000.00.

M.C.L. § 750.174(1), (5)(a).   *See People v. Karla Sue Lockman*, Charlevoix County Circuit Case No. 05-050-10-FH (Judgment of Sentence, Aug. 22, 2006) (docket no. 119).  Both plaintiffs have filed motions for summary judgment, and each motion will be discussed in turn below.

2

## II.  Stewart Title Motion

Stewart Title Guaranty Company (Stewart Title) underwrites policies of title insurance, and had a contract with Northern Preferred, a title agency in Charlevoix, Michigan, to underwrite title insurance policies issued by the latter.[1]   Northern Preferred also handled closings.

Pursuant to the contract(s) between the parties, Northern Preferred was obligated to hold in its escrow account funds which were to be used in connection with the closing of real estate transactions in which Stewart Title title policies were issued.  As a closing agent, Northern Preferred would receive purchase funds from a buyer of real estate and other funds necessary to the closing, place the funds in a Northern Preferred escrow account, and disburse to the seller and others the proceeds to which they were entitled at the closing.  The contract between Stewart Title and Northern Preferred required that Northern Preferred reconcile its escrow account on a monthly basis to make sure the escrow account always had funds sufficient to meet payout obligations on the transactions for which the funds were entrusted to Northern Preferred.

Northern Preferred hired Karla Lockman in September 2003 as a real estate closing escrow officer.  She was trained in the company's Charlevoix office and in August 2004 was transferred to the company's Boyne City office.  She had responsibility for loan documentation, scheduling closing transactions and receiving and disbursing funds into and out of Northern

---

[1] Stewart Title initially entered into a Title Insurance Underwriting Agreement with defendants John P. Taylor and Paula M. Barron on January 31, 1995. Under the Title Insurance Underwriting Agreement, defendants Taylor and Barron became limited agents of Stewart Title for the purpose of issuing title policies in Stewart Title's name within a designated geographic territory.  The agreement was apparently amended on March 31, 1995, when Preferred Title Company, a Michigan corporation, replaced Taylor and Barron as Agent.  The agreement was again amended on December 1, 2002 to reflect that Preferred Title Company would thereafter be transacting business under the assumed name (dba) of Northern Preferred Title Corporation.  Stewart Title and Northern Preferred Title Company entered into a new Title Insurance Underwriting Agreement on May 11, 2004.

Preferred's escrow accounts. As such, she had access to Northern Preferred's escrow account in the Bank of Northern Michigan, which Northern Preferred opened in March 2004. Lockman, along with Taylor and Barron, were authorized signators on the account.

      Stewart Title maintains that the money Karla Lockman embezzled came from these trust funds and caused a shortfall in the escrow account which went unchecked by Northern Preferred (and defendant Taylor). As a result, the funds were not available to close certain real estate transactions which, Stewart Title claims, caused Stewart Title to defend and/or pay certain title insurance claims due to the shortfall in the escrow account.

      In one particular transaction, the Carol Godwin Trust (Godwin) sold property in Charlevoix to Thomas and Patricia Burke (the Burkes). Stewart Title underwrote a buyer's title insurance policy issued by Northern Preferred to the Burkes. After the transaction closed, the proceeds check to seller Godwin, drawn on Northern Preferred's escrow account from which Lockman was embezzling, was returned for insufficient funds. Godwin then sued the Burkes and Stewart Title to rescind the purchase transaction. The Burkes, who were insured by Stewart Title under their buyer's title insurance policy, also filed a claim against Stewart Title. As a result of these claims, Stewart Title states it paid a sum in excess of $364,000.

      In another instance, Stewart Title paid in excess of $288,000 on behalf of its insureds, William and Melinda Mallory, against another title insurance policy claim which also allegedly resulted from Karla Lockman's embezzlement of funds from Northern Preferred's escrow account.

      Stewart Title states it has also incurred legal fees of at least $275,000 defending claims brought against it and/or its insureds following Lockman's embezzlement, and in attempting to recover the monies owed to Stewart Title.

The title underwriting agreement between Stewart Title and Northern Preferred was terminated by Stewart Title on June 14, 2005.

Stewart Title, plaintiff in the lead case, filed a 14-count amended complaint against defendants Karla Lockman, her husband Kevin Dale Lockman ("Kevin Lockman"), Northern Preferred, Northern Preferred's president Paula M. Barron ("Barron"), and Northern Preferred's chief executive officer John P. Taylor ("Taylor"). Stewart Title's claims against Barron, Taylor, and Northern Preferred have been dismissed. Stewart Title has nine claims remaining against Karla Lockman and Kevin Lockman as follows:[2]

| Count I | Karla Lockman | breach of fiduciary duty |
|---|---|---|
| Count II | Karla Lockman | embezzlement |
| Count III | Karla Lockman | misappropriation |
| Count IV | Karla Lockman | fraudulent misrepresentation |
| Count V | Karla & Kevin Lockman | common law and statutory conversion |
| Count VI | Karla & Kevin Lockman | civil conspiracy |
| Count VII | Karla & Kevin Lockman | concert of action |
| Count VIII | Karla & Kevin Lockman | preliminary and permanent injunction |
| Count IX | Karla & Kevin Lockman | constructive trust |

This matter is now before the court on Stewart Title's motion for summary judgment (docket no. 102) filed in the lead case, No. 5:05-cv-92.

---

[2]Stewart Title does not, in this motion, seek summary judgment against the Lockmans in this motion on Counts I, IV or VIII. Plaintiff's Motion for Summary Judgment (docket no. 102) at 10.

### III.    Standard of review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Karen Lockman and Kevin Lockman have not filed responses to plaintiffs' motions for summary judgment, having asserted their right to remain silent under the Fifth Amendment due to the criminal proceedings, or possible criminal proceedings, against them.[3]    Stewart Title recognizes that a judgment imposing liability in a civil case cannot rest solely upon a privileged refusal to admit or deny a complaint.  *See, National Acceptance Co. of America,* 705 F.2d 924, 932 (7th Cir. 1983).  Generally, "[t]he fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996).  However, when a motion for summary judgment is unopposed,

---

[3] The Lockmans have been proceeding pro se since their attorney withdrew on December 4, 2006.

"[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### IV.     Stewart Title's motion for summary judgment

### A.     Withdrawn claims

At the motion hearing, Stewart Title withdrew its claims for summary judgment as to Counts VI and VII, as well as its claim for a constructive trust against Kevin Lockman as alleged in Count IX.  Accordingly, the court will not address these claims.

### B.     Karla Lockman

### 1.     Embezzlement (Count II)

Stewart Title's "civil embezzlement" claim against Karen Lockman is based upon her August 22, 2006 conviction for violating M.C.L. § 750.174.  In its first amended complaint, Stewart Title alleges that from January 2005 through April 2005, Karla Lockman utilized her position as a closing agent "to misappropriate at least $975,023.64" from an escrow account at Northern Preferred.  Stewart's First Amend. Compl. at ¶¶ 12-21.  As a result of Karla Lockman's actions, Stewart Title alleges that it:

> has been subjected to liability . . . including but not limited to, potential liability on at least one known occasion in which the [escrow account] contained insufficient funds to close a real estate transaction, leading a claim to be asserted against Stewart Title in the amount of $288,625.77, similar potential liability on other as yet unknown transactions, loss of business opportunities on future real estate closing transactions, and loss of goodwill.

*Id.* at ¶¶ 34, 39, 44, 51, 58, 64, 71.

In its brief, Stewart Title states that it suffered three types of damages arising from Karla Lockman's activities.  First, Stewart Title paid "approximately $364,243.25" in connection

with claims arising from a transaction involving the sale of real estate from the Carol Godwin Trust to Thomas and Patricia Burkes.  Stewart Title's Brief at 7.  Second, Stewart Title "paid the sum of $288,625.77 on behalf of its insureds, William and Melinda Mallory, against another title policy which directly resulted from Karla Lockman's embezzlement of funds from Northern Preferred's escrow account."  *Id.*   Third, "Stewart Title has incurred legal fees in the amount of at least approximately $275,000.00, including providing defense for claims against Stewart Title and/or its insureds as a result of Lockman's embezzlement, and in prosecuting claims to recover amounts owed to Stewart Title as a result of Lockman's embezzlement."  *Id.*

It is undisputed that Karla Lockman embezzled funds from Northern Preferred's bank accounts.  However, Karla Lockman's violation of the embezzlement statute and her subsequent conviction does not establish a "civil embezzlement" action in favor of Stewart Title.  "[T]he general rule is that a private right of action is not maintainable under a criminal statute."  *American Postal Workers Union, AFL-CIO, Detroit Local v. Independent Postal System of America, Inc.*, 481 F.2d 90, 93 (6th Cir. 1973).  "Equally important is the firmly established principle that criminal statutes can only be enforced by the proper authorities . . . and a private party has no right to enforce these sanctions."  *Id.* (internal quotations omitted).  "We have been quite reluctant to infer a private right of action from a criminal prohibition alone."  *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994).

In *Ticor Title Insurance Company v. National Abstract Agency, Inc.*, No. 05-cv-73709-DT, 2007 WL 2710113 (E.D. Mich. Sept. 13, 2007), the court addressed the question of whether a plaintiff could bring a civil cause of action for embezzlement.  Relying on the general rule expressed in *Central Bank of Denver*, the court determined that the prohibition against

8

embezzlement set forth in M.C.L. § 750.174 did not create a private right of action for the plaintiff, noting that it was a "bare criminal statute[] containing no indication that a private right of action is available." *Ticor Title*, 2007 WL 2710113 at *10. *See also Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997) (violations of criminal mail and wire fraud statutes do not give rise to private causes of action); *Purk v. United States*, 747 F. Supp. 1243, 1248 (S.D. Ohio 1989) (finding that the federal criminal statutes relied upon by the plaintiff in a civil action "address criminal offenses which can be prosecuted only by the proper United States authorities and which do not permit private causes of action").

The court agrees with the reasoning as set forth in *Ticor Title*, and concludes that Stewart Title cannot bring the present civil action against Karen Lockman for embezzlement based upon M.C.L. § 750.174. Although Karla Lockman did not move for summary judgment, there is no legal basis for this claim. For this reason, the court will exercise its discretion to enter summary judgment in her favor. *See Wilson v. Continental Development Co.*, 112 F.Supp.2d 648, 663 (W.D. Mich. 1999) ("By moving for summary judgment, defendants invite an adjudication on the basis of undisputed facts, even in the absence of a cross-motion by plaintiff"); *Eckford-El v. Toombs*, 760 F.Supp. 1267, 1272 (W.D. Mich. 1991) ("If one 'party moves for a summary judgment, and the court finds that the moving party is not entitled, it would seem that the court has the power to enter the proper judgment, although a cross-motion therefor was not made.' 6 J. Moore, W. Taggart & J. Walker, Moore's Federal Practice ¶ 56-12, at 56-161 (2d ed. 1988)").

Accordingly, Stewart Title's motion for summary judgment will be denied as to Count II and Karla Lockman will be granted summary judgment on this count.

### 2.       Common Law and Statutory Conversion (Count V)

In Count V, Stewart Title brings common law and statutory conversion claims against Karla and Kevin Lockman.  The common law tort of conversion is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.  *See AFSCME  v. Bank One,* 267 Mich. App. 281, 296 n. 6, 705 N.W. 2d, 355 (2005). However, an action for a conversion of money can be maintained only if there was an obligation on the defendant's part to return specific money entrusted to him.  *Id.*  In other words, where the defendant is obligated to return an amount of money equal to the amount of money that he took, as opposed to the specific, identifiable money that he took, an action for conversion will not lie.  *Id.* (holding that defendant union officers who unlawfully transferred money from the union's bank account "had no obligation to return any specific cache of money"); *Ticor Title Insurance, supra. See also, Echelon Homes LLC v. Carter Lumber Company,* 261 Mich. App. 424, 436-39, 683 N.W. 2d, 171 (2004), *rev'd in part on other grounds,* 472 Mich. App. 192, 694 N.W. 2d, 544 (2005) (holding that, where the defendant-employee embezzled the bank funds from the plaintiff-employer, a claim for common law conversion could not be sustained because the plaintiff was not entitled to the specific or identifiable money embezzled, but rather to an amount of money equal to the amount embezzled).  Thus, even if Stewart Title could demonstrate that the Lockmans were exercising wrongful dominion over money belonging to it, an issue discussed more fully below, the common law tort of conversion would not lie against either of these defendants.

Statutory conversion, by contrast, consists of knowingly buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property.  *Lawsuit Financial, LLC v. Curry,* 261 Mich.App. 579, 683 NW 2d 233 (2004); *Head v. Phillips Camper Sales & Rental, Inc.,*

234 Mich. App. 94, 593 NW 2d 595, 603 (1999) (quoting MCL § 600.2919a). The conversion statute, however, provides a remedy against the accomplice only and not against the person who actually stole, embezzled or converted the property. *Echlon Homes, supra; Campbell v. Sullins,* 257 Mich. App. 179, 667 NW 2d 887 (2003). In *Ticor Title*, the court distinguished common law conversion from statutory conversion:

> Statutory conversion, by contrast, consists of knowingly "buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property." *Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich.App. 94, 593 N.W.2d 595, 603 (Mich.Ct.App.1999) (quoting Mich. Comp. Laws § 600.2919a). However, statutory conversion is "not designed to provide a remedy against the individual who has actually stolen, embezzled, or converted the property." *Marshall Lasser, PC v. George*, 252 Mich.App. 104, 651 N.W.2d 158, 162-63 (Mich.Ct.App.2002).

*Ticor Title*, 2007 WL 2710113 at *10. Accordingly, a statutory claim of conversion would not lie against Karla Lockman, as Stewart Title tacitly acknowledges at the end of Count V of its first amended complaint, where it seeks the treble damages provided by the statutory conversion provision, MCL 600.2919a, against only Kevin Lockman. Accordingly, the statutory claim of conversion against Karla Lockman will be dismissed.

While the conversion statute may provide a remedy against Kevin Lockman as an accomplice to his wife's embezzlement, genuine issues and material fact remain as to Stewart Title's right to the embezzled funds, as discussed below. Accordingly, plaintiff's motion for summary judgment on its statutory conversion claim against Kevin Lockman is denied.

### 3. Remaining Claims of Stewart Title Against the Lockmans

Stewart Title has failed to support its motion for summary judgment as to its remaining claims. While it undoubtedly had an underwriting agreement with Northern Preferred, and Northern Preferred's employee, Karla Lockman, undoubtedly embezzled funds from Northern

11

Preferred's escrow account, Stewart Title has failed to link this defalcation to its own losses, legally speaking. It has produced neither evidence nor legal authority to demonstrate how its sundry legal claims entitle it to a remedy from the Lockmans for the damages it purportedly suffered as a result of the two failed real estate transactions. As already discussed, some of its claims clearly do not support plaintiff's motion..

Stewart Title's relationship with Karla Lockman was attenuated at best. For example, Karla Lockman was an employee of Northern Preferred, not Stewart Title. The relationship between Northern Preferred and Stewart Title was limited. Northern Preferred was an agent authorized to issue title policies in Stewart Title's name, but by terms of the Title Insurance Underwriting Agreement was expressly not appointed as Stewart Title's agent for purposes of providing escrow services, and Stewart Title had no liability for claims or losses due to Northern Preferred providing such services. The escrow account Karla Lockman embezzled from belonged to Northern Preferred, not Stewart Title. Presumably, most of the funds in the escrow account belonged to the buyers and/or sellers in the transactions, not Stewart Title. While Stewart Title had underwritten title policies in the two real estate transactions handled by Northern Preferred, typically such policies ensure the marketability of the titles to property, etc. There has been no claim that the titles being conveyed were defective. If the title policies were ensuring anything else (the title policies have not been provided to the court), the further obligations of Stewart Title have not been shown. Nor has Stewart Title explained specifically what claims were made against it in the two real estate transactions, how or why those claims were resolved, or how the amounts paid by Stewart Title were determined. Indeed, Stewart Title's legal claims are not discussed at all in its motion.

The underwriters in these two cases cannot expect the court to simply assume, without more, that Karla Lockman's embezzlement from her own employer entitle them to a blank check from her.   "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to  . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Accordingly, Stewart Title's  motion for summary judgment will be denied with respect to Counts III and IX.

### V.   First American's motion for default judgment against defendants Karla and Kevin Lockman

First American Title Insurance Company ("First American"),  plaintiff in the second case, also filed a complaint against the defendants.  Its relationship with Northern Preferred was similar to the one Stewart Title had, and its underwriting agreement was terminated in early June 2005.  First American subsequently dismissed its claims against Barron and then filed a 12-count amended complaint against Karla Lockman, Kevin Lockman, Northern Preferred and Taylor as follows:

| Count I | Karla Lockman | breach of fiduciary duty |
| Count II | Karla Lockman | embezzlement |
| Count III | Karla Lockman | misappropriation |
| Count IV | Karla & Kevin Lockman | common law and statutory conversion |
| Count V | Karla & Kevin Lockman | civil conspiracy |
| Count VI | Karla & Kevin Lockman | constructive trust |
| Count VII | Northern Preferred | breach of contract |

13

| Count VIII | Northern Preferred & Taylor | breach of fiduciary duty |
| Count IX | Taylor | negligence |
| Count X | Northern Preferred & Taylor | constructive trust |
| Count XI | Northern Preferred | enforcement of security agreement |
| Count XII | Northern Preferred | negligence and unjust enrichment |

First American has filed a motion for both default judgment against the Lockmans (docket no. 99) in case number 1:05-cv-736.

A party must complete two steps before the court may enter a default judgment:

> first, pursuant to Fed.R.Civ.P. 55(a), the party seeking a default judgment must have the clerk enter the default by submitting the required proof that the opposing party has failed to plead or otherwise defend; second, pursuant to Fed.R.Civ.P. 55(b), the moving party may seek entry of judgment on the default under either subdivision (b)(1) or (b)(2) of the rule.

*Dahl v. Kanawha Investment Holding Company*, 161 F.R.D. 673, 683 (N.D. Iowa 1995). "When considering whether to enter a default judgment, a court should take into account: 1) possible prejudice to the plaintiff; 2) the merits of the claims; 3) the sufficiency of the complaint; 4) the amount of money at stake; 5) possible disputed material facts; 6) whether the default was due to excusable neglect; and 7) the preference for decisions on the merits." *Russell v. City of Farmington Hills*, 34 Fed.Appx. 196, 198 (6th Cir. 2002).

First American's motion for default judgment is premature because it has failed to seek entry of a default from the clerk under Rule 55(a) with respect to Karla and Kevin Lockman. Even if First American had properly defaulted Karla and Kevin Lockman for failing to answer the amended complaint, its motion and brief fail to demonstrate entitlement to a default judgment. Karla and Kevin Lockman have appeared in this action and answered First American's original complaint.

14

At this stage of the litigation, an entry of default judgment is tantamount to a sanction.  *See, e.g.,*
*Enron Oil Corporation. v. Diakuhara*, 10 F.3d 90, 96 (2nd Cir. 1993) ("Default procedures, of
course, provide a useful remedy when a litigant is confronted by an obstructionist adversary");
*Comdyne I, Inc. v. Corbin*,  908 F.2d 1142, 1145-49 (3rd Cir. 1990) (entry of a default judgment
against defendants based on their failure to file a timely answer to amended complaint was not abuse
of discretion, where they had long a history of dilatoriness, defied court orders and presented no
evidence demonstrating that defenses or counterclaims were meritorious). The *Corbin* factors do not
predominate here.  Accordingly, First American's motion for default judgment will be denied.

### VI.    First American's motion for summary judgment

First American also seeks summary judgment against defendants Karla Lockman,
Kevin Lockman and Northern Preferred.[4]

#### A.    Karla Lockman and Kevin Lockman

#### 1.    Breach of fiduciary duty (Count I), misappropriation (Count III), civil conspiracy (Count V) and constructive trust (Count VI)

First American has failed to provide any argument or legal authority to support its
motion for summary judgment directed at defendants Karla Lockman and Kevin Lockman for breach
of fiduciary duty, misappropriation, civil conspiracy and the establishment of a constructive trust.
 Indeed, these claims are not even discussed in the motion. *See, McPherson v. Kelsey, supra.*
Accordingly, First American's motion for summary judgment will be denied with respect to Counts
I, III, V and VI .

---

[4] Neither First American's motion nor its brief seeks summary judgment against the fourth remaining
defendant, John Taylor.

### 2. Karla Lockman's Embezzlement (Count II)

In its first amended complaint, First American alleges that "Karla Lockman utilized the funds that she misappropriated to subsidize the purchase of personal property and the purchase of a house she occupies with Kevin Lockman."  First American's amend. compl. at ¶ 16.  First American alleges that her embezzlement from Northern Preferred's accounts caused First American to suffer damages "including the failure to receive premium dollars, nonpayments upon [Northern Preferred's $100,000.00 promissory note payable to First American] and liability to its insureds." *See id.* at ¶¶ 8-9, 23-24, 28-29, 33-34, 40, 45.  Like Stewart Title, First American does not allege that Karla Lockman took any funds, specifically identified to First American, but simply alleges "embezzlement" based upon her criminal conviction for embezzlement from her own employer.  For the reasons previously stated in § IV.B.1., *supra*, First American's claims for embezzlement as alleged in count II will be denied and Karla Lockman will be granted summary judgment on this count.

### 3. Karla Lockman and Kevin Lockman's conversion (Count IV)

### a. Common law conversion claim against Karla Lockman

"In the civil context, conversion is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391, 486 N.W.2d 600 (1992).  "Checks are considered to be the property of the designated payee and may be the subject of a suit for conversion."  *Trail Clinic, P.C. v. Bloch*, 114 Mich. App. 700, 705, 319 N.W.2d 638 (1982). "However, '[a]n action for the conversion of bank account funds . . . can be maintained only if there was an obligation on the defendant's part to return or deliver the specific money entrusted to it.'

*Check Reporting Services, Inc. v. Michigan National Bank-Lansing*, 191 Mich.App. 614, 626, 478 N.W.2d 893 (1991)." *AFSCME,* 267 Mich.App. at 296 n. 6.

First American alleges that "Karla Lockman exercised wrongful dominion or control over Northern Preferred's accounts by transferring funds to the Lockman account, a personal account owned by Karla and Kevin Lockman. First American amend. compl. at ¶ 37. As in the Stewart Title case, this allegation fails to state a claim for common law conversion because Karla Lockman did not wrongfully exert control over specifically identifiable First American property. Rather, she wrongfully exerted control over funds in Northern Preferred's accounts. Accordingly, First American's conversion claim against Karla Lockman fails.

### b.      Statutory conversion claim against Karla and Kevin Lockman

In the same count, First American alleges that Karla and Kevin Lockman violated M.C.L. § 600.2919a (i.e., "statutory conversion") as follows:

> Upon information and belief, Kevin Lockman knew that Karla Lockman converted the funds detailed herein, yet received the funds and the resulting proceeds of the conversion (including, but not limited to the house occupied by the Lockmans) and/or aided Karla Lockman in the concealment of the converted funds in violation of MCLA § 600.2919a.

First American amend. compl. at ¶ 39.

For the reasons previously stated in § IV.B.2, *supra,* First American cannot maintain an action against Karla Lockman, the individual who actually embezzled the funds, for violating § 600.2919a. To the extent First American could maintain a claim against Kevin Lockman, it has failed thus far to present a sufficient factual basis to establish the elements of its statutory conversion claim against him. See discussion as to Stewart Title, *supra.* Accordingly, First American's motion for summary judgment against Kevin Lockman will be denied as to Count IV. In addition, because

First American has failed to state a claim for conversion against Karla Lockman, the court will grant

her summary judgment on this count.  *See Wilson*, 112 F.Supp.2d at 663; *Eckford-El*, 760 F.Supp.

at 1272.

> **B.      Northern Preferred**

> **1.      Breach of fiduciary duty (Count VIII), constructive trust (Count X), or enforcement of security agreement (Count XI)**

First American's summary judgment motion against Northern Preferred is limited

to the breach of contract claim in Count VIII and that negligence and unjust enrichment claim in

Count XII.   First American provides no argument or legal authority to support its claims against

Northern Preferred for breach of fiduciary duty, constructive trust, or enforcement of security

agreement.  Accordingly, this opinion will not address First American's claims alleged in Counts

VIII, X, or XI.

> **2.      Breach of contract (Count VII)**

> **a.      The promissory note**

On January 1, 2005, Northern Preferred executed a promissory note in which it

agreed to pay First American the sum of $100,000.00 plus interest by no later than January 1, 2007.

*See* Promissory Note attached to First American's brief as Exh. 2.  The promissory note required

Northern Preferred to make monthly installment payments to First American in the amount

$4,364.78 commencing in February 2005.  *Id.*  The promissory note provides in pertinent part that

"[i]f any installments of this note are not paid in full when due  . . . shall become due and payable

at the election of the holder hereof without notice."  *Id.*  James A. Dondero, an attorney employed

by First American, executed an affidavit stating that the promissory note is in default, and that the

amount of principal and interest owed through November 7, 2006 was $94,254.77, with additional

interest owed in the amount of $12.50 per day.  Dondero Affidavit (Nov. 14, 2006) attached to First American's brief as Exh. 4.

Northern Preferred offers no evidence to dispute the validity of the note, its default on the note or the amount due.  Taylor signed the promissory note in his capacity as Northern Preferred's Chief Executive Officer.  *See* promissory note.  In his affidavit in opposition to the motion, Taylor merely states that Northern Preferred was unable to reconcile its trust account for the months of February through May 2005 "due to the embezzlement of funds by Karla Lockman, the manipulation of the account by Karla Lockman, and the misrepresentations made to me by Karla Lockman with respect to the activity in the account" and that he first learned that this bank account was overdrawn in late May 2005.  Taylor Affidavit at ¶ ¶ 15-16, attached to Northern Preferred's brief as Exh. 1.  Taylor also states that:

> 17.   Thereafter, in early June, 2005, the agency relationship between "First American" and "Northern Preferred" was terminated by "First American."
>
> 18.   Because of the termination of the agency agreement, "Northern Preferred" could no longer generate income and was therefore unable to pay its debts, including those owed to "First American."

*Id.* at ¶¶ 17-18.

While Taylor's affidavit provides an explanation for Northern Preferred's failure "to pay its debts" owed to First American, Northern Preferred provides neither an argument nor legal authority to explain why it should be released from the obligation to pay the amount due on this promissory note.  Accordingly, First American will be granted summary judgment in the amount of $94,254.77 plus interest accrued since November 7, 2006 at the rate of $12.50 per day.

### b.     Title Insurance Premiums

Next, First American contends that Northern Preferred owes it $35,976.19 for unremitted title premiums.  First American has provided a copy of an agency agreement with Northern Preferred dated December 17, 2004.  *See* agency agreement attached to First American's brief as Exh. 1.  First American has also provided a copy of a summary of "open invoices" from "9/23/2003 through 9/23/2005" in the amount of $35,976.19.  *See* invoice summary attached to First American's brief as Exh. 3.  This summary does not include any dates nor identify Northern Preferred as the debtor.

First American's cryptic brief does not address Northern Preferred's responsibility to remit title premiums, which apparently arise from ¶¶ 5 and 6 of the agency agreement.  However, Dondero states in his affidavit that "Northern Preferred has failed to pay First American $35,976.19 for title premiums."  Dondero Aff. (Nov. 14, 2006) at ¶ 6.  Northern Preferred does not contest its liability for these premiums.  Accordingly, First American will be granted summary judgment on this claim in the amount of $35,976.19.

### 3.     Unjust enrichment (Count XII)

Finally, First American brings a claim of $16,503.52 for unjust enrichment for amounts paid due to misappropriation of funds at a closing.  First American's First Amended Complaint, Count XII;  First American's brief at 3.  In his first affidavit, Dondero explained this claim as follows:

> 5.      In addition, as set forth in the complaint, First American paid upon a claim due to misappropriation of funds by Northern Preferred Title Company, LLC. The amount paid totals $16,503.52.

Dondero Aff. (Nov. 14, 2006) at ¶ 5. By itself, this conclusory statement is insufficient to support

a grant of summary judgment against Northern Preferred for negligence or unjust enrichment. First

American, however, provided the court with another affidavit from Dondero, which provided in

pertinent part as follows:

> 2.    This claim relates to Northern Preferred's file number 050300052 and First
>       American's claim number 05-0439-01.
>
> 3.    Northern Preferred closed a real estate transaction on the above referenced
>       file number. The closing statement required Northern Preferred to pay
>       money to US Bank, Citicard and Home Depot totaling $16,503.52. Northern
>       Preferred issued its checks to pay such bills, however, Northern Preferred's
>       checks bounced.
>
> 4.    First American insured parties to the closing. As a result of Northern
>       Preferred's bad checks, a claim was made upon First American to cover the
>       bills in order to protect its insured [sic] interest in the closing.
>
> 5.    To date, Northern Preferred has benefitted from First American's cover
>       payment, but has not reimbursed First American the $16,503.52 paid to cover
>       Northern Preferred's bad checks.

Dondero Aff. at ¶¶ 2-5 (Dec. 1, 2007). First American has also provided a copy of a "receipt,

assignment and release" for $16,503.52 signed by Gerald and Dorothy Talberg, and copies of its

checks issued to US Bank, Citicard and Home Depot. *See* Exh. 1 attached to First American's

supplemental brief. Northern Preferred does not contest the statements as set forth in the Dondero

affidavits, taking the position its liability for this loss is solely attributable to the defalcation of its

employee.

"The elements for a claim of unjust enrichment are 1) receipt of a benefit by the

defendant from the plaintiff and 2) an inequity resulting to plaintiff because of the retention of the

benefit by defendant." *PSA Quality Systems (Toronto), Inc. v. Sutcliffe,* 256 F.Supp.2d 698, 702

(E.D. Mich., 2003)(quoting *Barber v. SMH (US), Inc.,* 202 Mich.App. 366, 375, 509 N.W. 2d 791

21

(1994). Northern Preferred received a benefit from First American in the amount of $16,503.32. It retained this benefit to the detriment of First American and without legal justification. Certainly, an in-house theft by its own employee, Karla Lockman, provides none as against an innocent outside creditor. First American is entitled to summary judgment on its $16,503.52 claim of unjust enrichment.

### VII. Conclusion

Accordingly, Stewart Title's motion for summary judgment (docket no. 102) will be **DENIED**.

First American's motion for default judgment (docket no. 99) will be **DENIED**.

First American's motion for summary judgment (docket no. 99) will be **GRANTED** with respect to the breach of contract claims against Northern Preferred (Count VII) as follows:

      a.     Summary judgment will be granted in favor of First American in the amount of $94,254.77 with interest accrued since November 7, 2006 at the rate of $12.50 per day; and,

      b.     In addition, summary judgment will be granted in favor of First American in the amount of $35,976.19.

First American's motion for summary judgment (docket no. 99) will be **GRANTED** with respect to its claim against Northern Preferred for unjust enrichment (Count XII) in the amount of $16,503.52.

First American's motion for summary judgment (docket no. 99) will be **DENIED** in all other respects.

Karla Lockman will be **GRANTED** summary judgment as to Counts II and V of Stewart Title's first amended complaint.

Karla Lockman will be **GRANTED** summary judgment as to Counts II and IV of First American's first amended complaint.

An order consistent with this opinion shall be issued forthwith.


Dated:  March 25, 2008                    /s/ Hugh W. Brenneman, Jr.
                                          HUGH W. BRENNEMAN, JR.
                                          United States Magistrate Judge